IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON LEIGH MULLINS, | ) | CASE NO.  3:25-CV-01652-JRK |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES R. KNEPP, II |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Plaintiff, Brandon Mullins ("Plaintiff" or "Mullins"), challenges the final decision of Defendant, Frank Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying his application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

In April 2023, Mullins filed an application for POD and DIB, alleging a disability onset date of April 1, 2021, and claiming he was disabled due to post-traumatic stress disorder, bipolar disorder, anxiety, depression, fibromyalgia, and migraines.  (Transcript ("Tr.") 75, 118.)  The application was denied initially

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.

1

and upon reconsideration, and Mullins requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 75.)

On June 12, 2024, an ALJ held a hearing, during which Mullins, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On July 11, 2024, the ALJ issued a written decision finding Mullins was not disabled.  (*Id.* at 75-87.)  The ALJ's decision became final on June 16, 2025, when the Appeals Council declined further review.  (*Id.* at 1-7.)

On August 7, 2025, Mullins filed his Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 8-9.)  Mullins asserts the following assignment of error:

(1)    The ALJ's RFC was not supported by substantial evidence because it lacks manipulative limitations despite severe fibromyalgia and documented hand dysfunction.

(Doc. No. 8.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Mullins was born in January 1996 and was 28 years old at the time of his administrative hearing (Tr. 75, 85), making him a "younger" person under Social Security regulations.  *See* 20 C.F.R. § 404.1563(c). He has at least a high school education.  (Tr. 85.)  He has no past relevant work.  (*Id.*)

### B.    Relevant Medical Evidence[2]

A January 2014 x-ray of Mullins' right hand revealed mild degenerative osteoarthritis in the first metacarpophalangeal joint.  (*Id.* at 393.)

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.  As Mullins challenges only the ALJ's physical findings, the Court further limits its discussion of the medical evidence to Mullins' physical impairments.

An April 2022 x-ray of Mullins' thoracic spine revealed "[v]ery mild degenerative disc changes at the T9-10 level." (*Id.* at 426.)

On July 1, 2022, Mullins saw Jacob Grime, CNP, for complaints of back and right shoulder pain. (*Id.* at 482-83.) Mullins described his shoulder pain as stabbing and his back pain as a "squeezing" of his spine. (*Id.* at 483.) Heat dulled the pain, while ice worsened it. (*Id.*) Downward dog stretch provided some short-term relief. (*Id.*) Mullins told Grime he had tried all forms of IcyHot. (*Id.*) Grime noted that this was the fourth time since November 2021 that Mullins had been seen for the same complaints. (*Id.*) Mullins rated his pain as a 7/10. (*Id.*) On examination, Grime found tenderness of the thoracic and lumbar spine, paraspinal muscles, thoracic spinal muscles, and lumbar spinal muscles, as well as right paraspinal muscle spasm, thoracic paraspinal muscle spasm, and lumbar paraspinal spasm. (*Id.* at 484.) Grime noted Mullins moved all his extremities. (*Id.*) Grime prescribed Tramadol and ordered MRIs of the back and right shoulder. (*Id.* at 485.)

On July 13, 2022, an MRI of Mullins' right shoulder revealed suspected "[m]ild supraspinatus and infraspinatus tendinosis." (*Id.* at 480.)

On August 18, 2022, Mullins saw Ashok Biyani, M.D., for a consultation regarding his chronic lower back pain. (*Id.* at 446.) Mullins rated his pain as an 8/10 on average. (*Id.*) The pain radiated down his right leg, and he also experienced numbness and tingling in both his legs. (*Id.*) Mullins could walk up to a block with some discomfort. (*Id.*) Sitting improved the pain and bending backwards worsened it. (*Id.*) On examination, Dr. Biyani found tenderness to palpation of the right lumbar spine, "significant paraspinal spasm and guarding," pain-limited range of motion on extension, full strength of the bilateral lower extremities, normal sensory examination, negative straight leg raise test, and good range of motion of the bilateral hips with no increased pain. (*Id.* at 447.) Dr. Biyani noted x-rays revealed mild lumbar

3

levoscoliosis and an MRI revealed no significant central canal or foraminal stenosis.  (*Id.*)  Dr. Biyani ordered a rheumatoid panel.  (*Id.*)

On October 7, 2022, Mullins saw CNP Grime for follow up and reported worsening joint pain.  (*Id.* at 463.)  Mullins endorsed pain in his neck, back, shoulders, elbows, wrists, hips, knees, and ankles.  (*Id.* at 464.)  He rated his pain as a 10/10 that day.  (*Id.*)  Mullins told Grime the medication prescribed at his previous visit lasted 30 minutes before his pain returned at the same intensity it was before taking it.  (*Id.*)  Grime prescribed a prednisone taper and referred Mullins to pain management.  (*Id.* at 466.)

On December 12, 2022, Mullins saw Bashar Kahaleh, M.D., to establish care.  (*Id.* at 596.)  Mullins reported bilateral hip, shoulder, knee, and hand pain for over two years.  (*Id.*)  He told Dr. Kahaleh he had seen other providers, including physical therapy, psychiatry, and pain management.  (*Id.*)  Mullins stated he was unable to work because of weakness/pain.  (*Id.*)  On examination, Dr. Kahaleh found the classic distribution of fibromyalgia tender points as well as rigidity and tenderness in the cervical back.  (*Id.* at 597.)  Dr. Kahaleh also found subjective weakness and abnormal gait.  (*Id.* at 598.)  Dr. Kahaleh noted Mullins' history and exam were consistent with fibromyalgia.  (*Id.*)  He recommended Mullins discuss medication management with his psychiatrist, including adding gabapentin or pregabalin and milnacipran. (*Id.*)

On March 20, 2023, Mullins saw Dr. Kahaleh for follow up and reported "very little improvement" since his last appointment.  (*Id.* at 599.)  Mullins stated he was taking gabapentin and was not sure whether it was helping.  (*Id.*)  He told Dr. Kahaleh he had been trying to walk for exercise, but his pain still "severely" limited his functioning, and he was unable to work.  (*Id.*)  Mullins wanted to discuss his options regarding disability.  (*Id.*)  Dr. Kahaleh recommended Mullins continue with his current medications and referred Mullins for a functional capacity evaluation.  (*Id.* at 600.)

On May 9, 2023, Mullins saw Andrew Escobar, M.D., to establish care and reported "chronic, diffuse pains." (*Id.* at 628-29.)  Mullins told Dr. Escobar the pain was worse in his hands, shoulders, and upper back. (*Id.* at 629.)  Dr. Escobar noted that Mullins had recently undergone an FCE, which found Mullins capable of medium level work for eight hours a day, 40 hours per week. (*Id.*)  On examination, Dr. Escobar found full strength of the upper and lower extremities, "mildly positive" modified Hawkins test on the right, "diffuse, non-specific paraspinal pains" of the lower thoracic and entire lumbar regions, and "mild, diffuse" tenderness to palpation of the bilateral trapezius muscle. (*Id.* at 631.)  Dr. Escobar continued Gabapentin. (*Id.* at 632.)

On June 6, 2023, Mullins saw Dr. Escobar for follow up and reported continued pain in his upper and lower back as well as his groin. (*Id.* at 633.)  Mullins told Dr. Escobar his shoulder pains had improved. (*Id.*)  Mullins reported that his worst pain was in his hips, which radiated into his groin. (*Id.*)  Mullins stated he got "at least moderate relief" from his pain with Gabapentin, and that it reduced the intensity of his pain. (*Id.*  at 633-34.)  On examination, Dr. Escobar found full strength of the upper and lower extremities, negative Hawkins test bilaterally, "diffuse, non-specific paraspinal pains" of the lower thoracic and entire lumbar regions, full range of motion of the hips without pain, tenderness to palpation of the SI joint bilaterally, negative Faber sign bilaterally, and negative compression test bilaterally. (*Id.* at 635.)  Dr. Escobar noted he could consider increasing Gabapentin or trialing Lyrica to see if further pain management could be achieved. (*Id.* at 636.)

Mullins underwent lumbar medial branch block injections in August and September 2023. (*Id.* at 650, 652, 662, 677.)

On September 25, 2023, Mullins saw Dr. Kahaleh for follow up and reported continued pain at the same intensity as his past visit, but the injections had "significantly improved" his back pain. (*Id.* at 601-02.)  Mullins continued to experience myalgia pains that limited his daily activities. (*Id.* at 602.)  He told

5

Dr. Kahaleh he had been denied disability and was not working.  (*Id.*)  His medication regimen of Gabapentin and Cymbalta helped and had resolved the shooting and tingling pain from his shoulders to his lower back.  (*Id.*)  Mullins reported that his worst pain now was in his bilateral shoulders, hips, and hands.  (*Id.*)  On examination, Dr. Kahaleh found 4/5 strength in the upper and lower extremities, tenderness to palpation of the bilateral SI joint, bilateral trapezii muscles, and bilateral paraspinal muscles, but no tenderness to palpation of the bilateral SAB and bilateral bicipital groove.  (*Id.* at 603.)  Dr. Kahaleh ordered x-rays of the SI joint.  (*Id.*)  Mullins told Dr. Kahaleh he would consider trigger point injections.  (*Id.*)

On October 9, 2023, Mullins saw Dr. Escobar for follow up and reported that while he had experienced a 100% reduction in hip pain and 100% improvement in function following injections, his hip pain had now returned.  (*Id.* at 605.)  Mullins described his pain as a burning/stabbing when moving and dull/achy at rest.  (*Id.*)  He also described intermittent sharp, needle-like pain down his legs.  (*Id.*)  Mullins reported that Tramadol, ibuprofen, and Tylenol provided minimal relief.  (*Id.*)  On examination, Dr. Escobar found normal muscle tone, tenderness over the lumbar and thoracic facets, normal lower extremity motor function, diminished sensation in the lower legs bilaterally, negative straight leg raise test, tenderness to palpation along the right lateral side and SI joint, positive Patrick's/FABER test for pain in the lumbar back and groin on the right, and positive FADIR test for groin pain on the left.  (*Id.* at 607-08.)  Mullins' diagnoses consisted of fibromyalgia, other migraine with status migrainosus, not intractable, polyarthralgia, joint pain, and lumbar strain.  (*Id.* at 609.)  Dr. Escobar prescribed Robaxin and a Medrol Dospak.  (*Id.*)

On November 2, 2023, Mullins underwent trigger point injections on the right side.  (*Id.* at 696-97.) Mullins rated his pain as an 8/10 before the injections and a 4/10 after the injections.  (*Id.* at 697.)

On January 3, 2024, Mullins saw Melissa Waldman, NP, for follow up and reported continued pain that was the worst in his low back, hips, and right shoulder.  (*Id.* at 833-34.)  Mullins told Waldman Nabumetone, Gabapentin, and Robaxin were not helping.  (*Id.* at 834.)  He stated the only thing that helped

his pain was smoking marijuana. (*Id.*)  On examination, Waldman found normal upper extremity muscle tone, no tenderness over the cervical paraspinals or facets, positive Neer's, Hawkins, and empty can tests of the right shoulder, positive cross-arm adduction on the right, and tenderness over the right AC joint. (*Id.* at 836-37.)  Waldman ordered a right shoulder injection and transitioned Mullins from Gabapentin to Lyrica. (*Id.* at 838.)

On January 30, 2024, Mullins received a right posterior glenohumeral shoulder joint injection. (*Id.* at 841.)  Mullins rated his pain as a 6/10 before the injection and a 2/10 after the injection. (*Id.* at 842.)

On April 9, 2024, Mullins underwent additional lumbar injections. (*Id.* at 806-11.)

**C.      State Agency Reports**

On August 13, 2023, Leslie Green, M.D., reviewed the file and opined Mullins could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. (*Id.* at 123-24.)  He could stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. (*Id.* at 123.)  He could frequently climb ramps/stairs and occasionally climb ladders, ropes, and scaffolds. (*Id.*)  He could frequently stoop, kneel, crouch, and crawl. (*Id.*)  His ability to balance was unlimited. (*Id.*)  Mullins could frequently lift overhead with the right upper extremity. (*Id.* at 124.)

On December 3, 2023, on reconsideration, Steve McKee, M.D., reviewed the file and opined that Mullins could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds (*Id.* at 135, 137.)  Dr. McKee affirmed Dr. Green's other findings. (*Id.* at 135-36.)

**D.      Hearing Testimony**

During the June 12, 2024 hearing, Mullins testified to the following:

- He lives with his girlfriend and his two-year-old daughter. (*Id.* at 97.)

- He holds a valid driver's license. (*Id.*)  He struggles to drive the hour to his doctor appointments and back. (*Id.*)  After 20 minutes, he must shift positions, or his hips start to lock up and hurt. (*Id.*)  He manages the drive, but it causes a lot of pain. (*Id.* at 98.)

7

- He cannot work because of his back pain and "electricity feelings." (*Id.*)  Any wrong movement can cause a lot of pain and affect his whole day.  (*Id.*)

- He is right-handed.  (*Id.* at 99.)  His doctor imposed a 10-pound lifting restriction.  (*Id.*)  He likes to work on cars, but if he tries to do an oil change, his fingers and hands lock up when he tries to grip the wrench and break the nuts loose.  (*Id.*)  He has osteoarthritis in his right thumb.  (*Id.*)  His doctor told him his fibromyalgia could be causing the osteoarthritis.  (*Id.*)  The doctor wants him to undergo a neuropathy test to figure out what is going on with his hand.  (*Id.*)

- He likes to go fishing, and he goes twice in the summer.  (*Id.* at 102.)  He plays video games, but his hands start to lock up after 20-30 minutes.  (*Id.*)

- His fibromyalgia causes tingling and an "electric shock" feeling.  (*Id.* at 105-06.)  When that happens, the pain is a 9.5-10/10.  (*Id.* at 106.)  If he does not do much, his symptoms are at a minimum, but the more he does, the worse it gets.  (*Id.*)  If he tries to do the dishes and then sweep the kitchen, he will end up laying in his chair for an hour or more.  (*Id.*)  He can "feel the electricity just shooting through, like, [his] upper back into [his] shoulders."  (*Id.*)  His lower back starts to get a squeezing feeling.  (*Id.*)

The ALJ found that Mullins had no past relevant work.  (*Id.* at 112.)  The ALJ then posed the following hypothetical question:

> First hypothetical, assume that a hypothetical individual of the claimant's age, education, and work experience has the residual functional capacity for work at the light exertional level. Postural limitations are occasional climbing of ladders, ropes, or scaffolds, frequent climbing of ramps and stairs, frequent stooping, kneeling, crouching, and crawling. Manipulative limitations are frequent use of the right upper extremity for overhead reaching. Environmental limitations are to avoid all exposure to moving mechanical parts and high exposed places. The hypothetical individual can understand, remember, and carry out simple and/or detailed, but not complex instructions for work not requiring a specific production rate, such as assembly line work, or work requiring hourly quotas. They would be able to use judgment to make simple, work-related decisions with occasional explained changes in the routine work setting, occasional interaction with the general public. Dr. Wenkman, would there be any work in the national economy for a hypothetical individual with that first residual functional capacity?

(*Id.* at 112-13.)

The VE testified the hypothetical individual would be able to perform other representative jobs in the economy, such as routing clerk, assembly electronics, and sorter.  (*Id.* at 113.)

The ALJ modified the hypothetical to add a sit/stand option, and the VE testified that the identified jobs would remain at the same numbers.  (*Id.*)

The ALJ changed the exertion level to sedentary, and the VE testified the hypothetical individual would be able to perform other representative jobs in the economy, such as order clerk, final assembly optical, and inspection.  (*Id.* at 113-14.)

### III.   STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. § 404.1520(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. § 404.1520(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a

required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, Mullins was insured on the alleged disability onset date, April 1, 2021, and remained insured through March 31, 2025, the date last insured ("DLI").  (Tr. 75.) Therefore, in order to be entitled to POD and DIB, Mullins must establish a continuous twelve-month period of disability commencing between these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2025.

2.    The claimant has not engaged in substantial gainful activity since April 1, 2021, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.    The claimant has the following severe impairments: Degenerative disc disease lumbosacral with spondylosis without myelopathy or radiculopathy, fibromyalgia, posttraumatic stress disorder (PTSD), major depressive disorder/bipolar disorder, anxiety, intermittent explosive disorder (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except postural limitations of occasional climbing of ladders, ropes, or scaffolds. Frequent climbing of ramps and stairs. Frequent stooping,

kneeling, crouching, and crawling. Manipulative limitations of frequent use of the right upper extremity for overhead reaching. Environmental limitations to avoid all exposure to moving mechanical parts and high exposed places. Can understand, remember, and carry out simple and or detailed but not complex instruction, for work not requiring a specific production rate, such as assembly line work, nor work requiring hourly quotas. Capable of using judgement to make simple work-related decisions, with occasional explained changes in a routine work setting. Occasional interaction with the general public[.]

6. The claimant has no past relevant work (20 CFR 404.1565).

7. The claimant, born on January **, 1996, was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2021, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 77-87.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human*

11

*Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No.

12

11-1300, 2012 WL 5383120, at \*6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

In his sole assignment of error, Mullins argues that the ALJ's RFC lacks the support of substantial evidence because the ALJ only included one manipulative limitation – "'frequent use of the right upper extremity for overhead reaching'" – despite Mullins' subjective reports of "hand dysfunction" and 2014 x-rays showing mild degenerative osteoarthritis in his right thumb.  (Doc. No. 8 at 10.)  Mullins asserts that the sole manipulative limitation in the RFC "was insufficient to account for all manipulative limitations supported by the record, and therefore the RFC was incomplete."  (*Id.*)  Mullins maintains that this error was not harmless, as inclusion of handling and fingering limitations "would significantly erode the light occupational base."  (*Id.* at 13-14.)

The Commissioner responds that substantial evidence supports the ALJ's RFC.  (Doc. No. 9 at 5.)  The Commissioner argues that Mullins' "attempts to rely on his subjective complaints of hand pain are unconvincing because the recitation of symptoms does not alone support further limitations."  (*Id.* at 6) (citing 20 C.F.R. §§ 404.1529, 404.1502(f)-(g), (k)-(l)).  In addition, even if the evidence Mullins cites in his brief "could plausibly support additional manipulative limitations, it is inconsequential where substantial evidence supports the ALJ's determination," as it does here.  (*Id.* at 7.)  Therefore, the Commissioner maintains, the Court should uphold the ALJ's RFC findings.  (*Id.*)

Social Security Ruling 12-2p sets forth the agency's policy in the evaluation of fibromyalgia and explains that fibromyalgia is a common and complex medical condition "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues."  SSR 12-2p also provides the criteria

for determining whether a claimant has a Medically Determinable Impairment ("MDI") of fibromyalgia. After finding fibromyalgia to be a severe impairment, the regulation provides that the ALJ will evaluate a claimant's statements using the same credibility analysis for evaluating an individual's symptoms under any MDI,[3] which requires the ALJ:

> [C]onsider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms….[and] As we explain in [SSR 16-3p], we will make a finding about the credibility of the person's statements…

SSR 12-2p (July 25, 2012).[4]

Though the same factors are applied to fibromyalgia as to any MDI, caselaw demonstrates that "[t]he nature of fibromyalgia undercuts the efficacy of many of these factors and muddies the legal analysis." *Cooper v. Comm'r of Soc. Sec.,* No. 4:13-CV-11883, 2014 WL 4606010, at *23 (E.D. Mich. June 17, 2014), *report and recommendation adopted*, No. 13-11883, 2014 WL 4607960 (E.D. Mich. Sept. 15, 2014). Because of this, courts have found that the ALJ should not overemphasize any one factor and the ALJ must also "consider a longitudinal record…because the symptoms of fibromyalgia can wax and wane…" SSR 12-2p at *6. In interpreting caselaw in this area, it is important to note that "there is a significant distinction

---

[3] SSR 12-2p refers to SSR 96-7p's two-step criteria for making credibility determinations.  SSR 96-7p was superseded by SSR 16-3p on March 28, 2016.

[4] The Court notes that while the ALJ fails to explicitly mention SSR 12-2p in the decision, Mullins makes no argument that any such failure is error, let alone harmful error.  (Doc. No. 8.)  Nor does Mullins raise any specific challenge to the ALJ's subjective symptom analysis.  (*Id.*)  Thus, any challenge to the ALJ's credibility determination is waived and Mullins has failed to demonstrate the ALJ violated SSR 12-2p. *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 400 (6th Cir. 2016) ("Plaintiff does not argue that the ALJ's credibility determination was incorrect or unsupported by substantial evidence. Thus, that issue is waived."). It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See, e.g., Kennedy v. Comm'r of Soc. Sec.,* 87 Fed. App'x 464 (6th Cir. 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050, 118 S. Ct. 1370, 140 L.Ed. 2d 518 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant).

between failing to find a severe impairment at step two, and failing to find disability at step five." *Cooper v. Comm'r of Soc. Sec.,* No. 4:13-CV-11883, 2014 WL 4606010, at \*19 (E.D. Mich. June 17, 2014), *report and recommendation adopted.,* No. 13-11883, 2014 WL 4607960 (E.D. Mich. Sept. 15, 2014) (emphasis added); *see also Torres v. Comm'r of Soc. Sec.,* 490 F. App'x 748, 754 (6th Cir. 2012) (noting the "important distinction between, on one hand, diagnosing fibromyalgia and finding it to be a severe impairment and, on the other, assessing a claimant's physical limitations due to the impairment").

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. § 404.1527(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence (20 C.F.R. § 404.1546(c)) and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996). "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96-8p, 1996 WL 374184, at \*7 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, the claimant bears the burden

15

of establishing the impairments that determine her RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*). However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). *See also Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

At Step Two, the ALJ found Mullins' fibromyalgia to be a severe impairment. (Tr. 77.) As part of the Step Two analysis, the ALJ further found as follows:

> In addition to severe impairments, the claimant has non-severe impairments.
> An impairment that is "not severe" has not met the durational requirements

16

and/or imposes only a slight abnormality or no more than minimal limitations on the ability to do basic work activities. Specifically, the record discloses a history of migraines, qualitative platelet disorder, varicocele, and chondromalacia of patella (Exhibit 4F/5) as identified by the claimant's representative in a prehearing brief (Exhibit 17E). However, there has been no treatment for said conditions. The claimant has reported pain in the knees in the context of generalized joint pain (Exhibit 5F/8, 12). There has been no imaging studies or specific treatment of the knees. There is mention of obesity in 2016 (Exhibit 4F/33). However, the claimant's BMI has remained below obesity levels. There is no consistent pattern of obesity throughout the time at issue, and it is not clearly established as a severe impairment. **The claimant testified to osteoarthritis in the right thumb and to locking up of the hands when holding a wrench (hearing testimony). X-rays in 2014 showed mild degenerative osteoarthritis in the first metacarpophalangeal joint (Exhibit 1F/2). However, there has been no treatment or further imaging of the right thumb during the period at issue.** The claimant complained of shoulder pain after heavy lifting at work in 2022. X-rays were essentially normal (Exhibit 3F/6). However, an MRI showed findings consistent with mild supraspinatus tendinosis that was treated in 2024 with right shoulder injections (Exhibit 13F/14, 58).

(Tr. 78) (emphasis added).

In the RFC analysis, the ALJ further found as follows:

The claimant's severe physical impairments combined have diminished his residual functional capacity. He retains the residual functional capacity for light exertion with slight postural restrictions as described, mainly due to mild levoscoliosis with lumbar pain and generalized joint pain. Although non-severe, in accounting for mild tendinosis of the right shoulder, the undersigned finds slight restriction in reaching overhead with the right upper extremity is warranted. To limit risks of injury or falling due to discomfort or pain, the claimant should not climb ladders, ropes, and scaffolds more than occasionally and must not expose to moving mechanical parts and to high exposed places. As discussed above, due residual psychologically based symptoms, the assessed residual functional capacity provides restrictions of interaction in the workplace, complexity of work tasks and work-related decisions, and of pace of production, while providing for a stable and predictable work setting.

(*Id.* at 84.)

In finding the state agency reviewing physicians' opinions persuasive, the ALJ explained as follows:

State Agency medical consultants Leslie Green, MD, (Exhibit 1A) and Steve McKee, MD (Exhibit 3A) reviewed the record in August and in December 2023 (respectively). Dr. Green found the claimant could perform at the medium exertional level with postural restrictions given he walked with a normal gait

17

without the use of an assistive device and retained intact motor strength throughout despite mild degenerative changes at T9-10, and pain of the lumbar spine. Dr. Green also provided slight restriction in reaching overhead with the right arm due to mild tendinosis of the right shoulder. Based on new evidence at the reconsideration level, Dr. McKee considered spondylosis of the lumbosacral joint treated with injections finding the claimant's residual capacity further diminished to light exertion while maintaining the same postural restrictions and frequent overhead reaching with the right arm. Dr. McKee included environmental limitations of avoiding all exposure to unprotected heights and hazardous moving machinery due to the combination of the lower back and fibromyalgia pain[.] The undersigned finds these opinions combined are consistent with the record in its entirely that reflects fibromyalgia pain and treatment for chronic pain despite normal gait, and motor strength (Exhibit 4F), treatment with injections to the lumbosacral spine, fibromyalgia with subjective sensory deficit and motor weakness treated with medication (Exhibit 9F) as well as discomfort from mild tendinosis of the right shoulder (Exhibit 5F). As such, the undersigned finds these opinions persuasive.

(*Id.* at 84-85.)

In finding the March 2023 FCE of limited persuasive value, the ALJ explained as follows:

A physical work performance evaluation was conducted in March 2023, based on fibromyalgia, at the request of the claimant's rheumatologist. No major area of dysfunction was noted during the evaluation and the claimant was found capable of work within the medium range of exertion, managing 20 to 50 pounds occasionally, 10 to 25 pounds frequently, and 10 pounds constantly (Exhibit 6F). The results of the assessment considered some self-limiting behavior. Additionally, evidence made of record thereafter, supports greater limitations related to lumbar spondylosis treated by pain management with injections (Exhibit 10F) and radiofrequency ablations (Exhibit 13F). As such, the undersigned finds the assessment has limited persuasive value.

(*Id.* at 85.)

First, Mullins' argument is not well-taken, as Mullins' counsel at the hearing never posed any hypotheticals with additional manipulative limitations to the VE. (*Id.* at 115-16.)

The ALJ provided a thorough and detailed analysis to support the restrictions within the RFC. The ALJ specifically considered Mullins' fibromyalgia in assessing the RFC. The ALJ determined that despite the ongoing pain, Mullins retained the "residual functional capacity for light exertion with slight postural restrictions." (*Id.* at 84.) Mullins points to no examinations demonstrating functional limitations regarding

18

the use of his hands.  "Even fibromyalgia" requires "sufficient objective evidence" regarding impairment of "functional abilities." *Ross v. Saul*, 5:19-CV-485-REW, 2020 WL 7634160, at *7 (E.D. Ky. Dec. 22, 2020) (citing and quoting SSR 12-2p).

Though Mullins cites evidence that could support his allegations, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citation omitted). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* at 773 (citations omitted). Judicial review is limited to "whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Castello v. Comm'r of Soc. Sec.,* 5:09 CV 2569, 2011 WL 610590 (N.D. Ohio Jan. 10, 2011).

As the ALJ built a logical bridge between the evidence and his decision, there is no reversible error.

### VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: May 26, 2026                                             *s/ Jonathan Greenberg*
                                                              Jonathan D. Greenberg
                                                              United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**